# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) | Case No. 2:14-cr-00387-JAD-NJK |
| | ) | |
| vs. | ) | ORDER |
| | ) | |
| ANTWON FORTENBERRY, | ) | |
| Defendant. | ) | |

Pending before the Court is Defendant Antwon Fortenberry's second motion to compel discovery. Docket No. 80. The Court has considered Defendant's motion, the United States' response and Defendant's reply. Docket Nos. 80, 81, 81. For the reasons discussed below, the Court hereby **DENIES** Defendant's motion.

## I.      BACKGROUND

On February 17, 2015, Defendant filed a motion to suppress evidence in the instant case. Docket No. 33. After the motion was fully briefed, the Court set an evidentiary hearing on the motion for April 16, 2015. Docket No. 38. Before the hearing could occur, however, disputes arose over discovery. *See* Docket Nos. 39, 43, 44, 45. On April 15, 2015, the Court held a hearing on Defendant's motion to compel discovery. Docket No. 47. Nonetheless, the disputes over discovery continued. *See* Docket Nos. 48, 52. On April 22, 2015, the Court granted Defendant's motion to continue the evidentiary hearing on his motion to suppress evidence, and set it for May 6, 2015. Docket No. 56. *See also* Docket Nos. 53, 54. . . . .

On May 6, 2015, the Court held an evidentiary hearing on Defendant's motion to suppress evidence. Docket No. 66. During the hearing, counsel for Defendant repeatedly raised discovery issues - both during argument and cross-examination - causing the Court to repeatedly remind counsel that the hearing was an evidentiary hearing on the motion to suppress evidence and not a discovery hearing. *Id*. The Court recessed the hearing to allow counsel to resolve any discovery issues, and continued it to the following day. *Id*. The Court then issued an order reiterating that the hearing set before the Court is one for the motion to suppress evidence and not a discovery hearing. Docket No. 67, at 1.[1] The Court ordered that counsel for Defendant, to the extent she believes she lacks the necessary discovery to move forward competently with the evidentiary hearing, must file a notice so indicating. *Id*. The Court further stated that, to the extent defense counsel believes the grounds exist to file any other sort of discovery motion, she must file a written motion seeking such relief. *Id*., at 2.

On May 7, 2015, Defendant filed a motion for production of text messages and emails. Docket No. 68. Later that same day, Defendant filed a motion to withdraw his motion for production of text messages and emails. Docket No. 74. On May 13, 2015, Defendant filed his second motion to compel discovery. Docket No. 80. The United States responded, and Defendant replied. Docket Nos. 81, 84.

Defendant asks the Court to order the United States to produce to him all information regarding collective knowledge. Docket No. 80, at 3-7. Defendant further asks the Court to order the United States to produce, prior to the resumption of the evidentiary hearing, pursuant to Rule[2] 26.2, all written statements of any witnesses that are in the government's possession and that relate to the subject matter of the witnesses' testimony. *Id*., at 7-8.[3]

---

[1]The Court vacated the hearing set for May 7, 2015. Docket Nos. 67, 70.

[2]Unless otherwise stated, all references to "Rules" refer to the Federal Rules of Criminal Procedure.

[3]Defendant suggests, numerous times throughout his motion, that the Court's rulings prevented him from obtaining the discovery to which he is entitled. *See, e.g.,* Docket No. 80, at 5 ("When defense counsel requested the government provide Segura's written communication, the Court stated 'this is not a discovery hearing'..."); *id*., at 7 ("During the suppression hearing, the Court prohibited defense counsel from requesting the production of prior witness statements."). Defendant implies that the only method he has of obtaining this discovery is to specifically request it, pursuant to Rule 26.2, only after the witness has testified on direct examination. *Id*., at 7-8. In reality, however, this District has a long-standing practice between

Defendant also asks the Court to order specific discovery to which he claims he is entitled.  First, Defendant requests "all emails, texts, letters, reports, inventory documents, and other written documents concerning the search warrant" of his phone between Las Vegas Metropolitan Police Department ("LVMPD") personnel and LVMPD personnel and the United States Secret Service ("Secret Service"). *Id*., at 8.  In support of this request, Defendant states that he has received some emails regarding the Secret Service's request for a search warrant, but has received no chain of custody documents.  *Id*.  Second, Defendant requests his complete phone records for the phone searched by the Secret Service.  *Id*., at 9. Defendant submits that the United States has not provided the full phone records from the forensic analysis of his cellular phone.  *Id*.  Third, Defendant requests all "emails, texts, letters, reports, and other written documents" upon which the Secret Service relied "relative to its assessment that [he] is a pimp and carries a weapon."  *Id*.  Fourth, Defendant requests all "emails, texts, letters, reports, and other written documents" upon which the Secret Service and any other agency relied regarding him.  *Id*.  In support of this request, Defendant submits that Secret Service agents traveled from San Francisco to Las Vegas to surveil him on at least three occasions, and he has not received any documentation regarding notice to local law enforcement of the Secret Service's presence in Las Vegas.  *Id*.  Fifth, Defendant requests LVMPD surveillance videos, logs and pictures, as well as Secret Service video surveillance of him as referred to in Secret Service emails.  *Id*., at 10.

Defendant's sixth request is for all "emails, texts, letters, reports, and other written documents from or to LVMPD agencies, other than the Vice Unit, regarding [Defendant's] alleged counterfeit activities. *Id*.  Defendant submits that, since the Secret Service began investigating him as part of a counterfeit case,

counsel in criminal cases of deeming all requests for discovery as having been made, including the requests discussed in Rule 26.2, and providing all witness statements prior to the direct examination of the witness. *See, e.g.* Docket No. 28.

In any event, the Court has provided Defendant, several times, just the opportunity he complains he did not receive - the opportunity to request all witness statements and, indeed, all discovery, to which he believes he is entitled before the cross-examination of any witness in the suppression hearing has been concluded. *See* Docket Nos. 47, 49, 56, 66, 67, 70, 79.  The pending motion is one such opportunity.  To the extent that, despite the long-standing practice in this District, Defendant continues to believe that he must specifically request witness statements pursuant to Rule 26.2, the Court has allowed him to do so, prior to the time the Rule allows and without repeated interruptions to the evidentiary hearing.

3

he requests all documents regarding his alleged counterfeit activities.  *Id*.  Seventh, Defendant requests all "handwritten notes, emails, text messages, and phone call histories" underlying the surveillance logs of the Secret Service.  *Id*.  Eighth, Defendant requests all "communications between officers and agents involved in investigating this case during the six hours prior to [Defendant's] arrest."  *Id*., at 11.  If those communications have been lost or destroyed, Defendant requests the phone records for the officers and agents to allow him to establish the timing of the communications.  *Id*.  Ninth, Defendant requests the names of all LVMPD officers who assisted the Secret Service during its Nevada surveillance of him.  *Id*. Defendant submits that this information is necessary to allow him to "fully investigate the extent of the collective knowledge the government argues exists to justify [his] warrantless arrest."  *Id*.  Tenth, Defendant requests any surveillance of him conducted by any agency upon the request of the Secret Service or LVMPD.  *Id*.  Finally, Defendant requests all cell site simulator information used to track him. *Id*., at 12.  Defendant submits that, since Defendant was tracked electronically for months before his arrest, he is entitled to all tracking information.  *Id*.

In response, the United States contends that Defendant motion to compel "is a sweeping and broad request for discovery, including discovery that does not even pertain to the suppression issue before the Court specifically, nor the instant case generally."  Docket No. 81, at 2.  The United States submits that, contrary to Defendant's contention that it relies upon all information LVMPD officers possessed relating to Defendant, it in fact relies upon "several discrete facts that contributed to the probable cause to arrest the Defendant *that night*."  *Id*. (emphasis in original).  Therefore, the United States argues, Defendant is not entitled to the very broad production of information he requests.  *Id*.  Further, the United States argues that Defendant's motion is a "fishing expedition," which is a practice that has been repeatedly rejected by Federal Courts.  *Id*., at 6-7.

The United States responds specifically to each of Defendant's numbered requests.  First, the United States submits that Defendant is not charged at this time with any crime originating out of the search of his phone, and no evidence from that search will be offered by the United States to establish that the recovery of the firearm from Defendant's person was constitutional.  *Id*., at 2.  The United States therefore submits that this evidence is irrelevant.  *Id*., at 2-3.  Second, the United States submits that it provided Defendant's counsel with a disc containing the results of the forensic analysis of Defendant's cell

4

1   phone pursuant to the search warrant.  *Id*., at 3.  Any information not on the disc, the United States
2   contends, is not in its possession; it does not intend to use it in the instant case; and any further information
3   is therefore irrelevant.  *Id*.

4        In response to Defendant's third request, the United States submits that the Secret Service relied
5   upon "verbal information from other law enforcement agencies, along with the Defendant's criminal
6   history ... which indicates that as recently as June 2012, the Defendant was arrested for 'CCW in Vehicle
7   w/Prior Felony Conviction.'" *Id*.  The United States contends that Defendant's fourth request is vague,
8   overbroad, and irrelevant.  Further, the United States submits that it is not required to produce internal law
9   enforcement communications that have nothing to do with the October 6, 2014 stop of Defendant.  *Id*., at
10  3-4.  In response to Defendant's fifth request, the United States states that LVMPD did not complete any
11  surveillance logs, and Secret Service has no surveillance video of Defendant.  *Id*., at 4.  Sixth, the United
12  States responds that, since it has not charged Defendant with any counterfeiting-related crimes and is not
13  relying on Defendant's counterfeiting activities in the instant case, the discovery sought in this request is
14  irrelevant.  *Id*.  Seventh, the United States responds that the surveillance logs do not contribute to the
15  United States' collective knowledge theory, the government is not relying upon them, and this request is
16  "another attempt by counsel for the Defendant to obfuscate the material issue." *Id*.

17       In response to Defendant's eighth request, the United States submits that it requested all text
18  messages pertaining to this case from the officers that it subpoenaed to testify at the suppression hearing.
19  *Id*., at 4-5.  Since Officer Segura no longer has the cell phone he used in October 2014, the United States
20  contends that the messages are not in the government's possession.  *Id*., at 5.  The patrol officers did not
21  communicate in writing, and the United States submits that all other text messages from the officers have
22  now been provided to Defendant.  *Id*.  Ninth, the United States responds that it has already provided
23  Defendant these names and that the information requested here "has nothing to do with collective
24  knowledge." *Id*.  Tenth, the United States responds that it is not relying on this information to establish
25  the collective knowledge of the LVMPD officers who arrested Defendant on the instant case and that this
26  information is not relevant.  *Id*.  Finally, the United States responds that tracking information is not part
27  of the collective knowledge at issue; it made no mention of cell site simulator use contributing to the
28  probable cause to arrest Defendant; and it is not relying upon cell site simulator data to establish the

1 | constitutionality of the stop at issue here. *Id.*, at 5-6. The information sought, therefore, is wholly
2 | irrelevant, according to the United States. *Id.*, at 6.

3 | In reply, Defendant again lists numerically his discovery requests. *See* Docket No. 84. Regarding
4 | request number one, Defendant states for the first time that the handling of his cell phone by the Secret
5 | Service and LVMPD "gives rise to pretrial motion under [*Franks v. Delaware*], 438 U.S. 154 (1978)."
6 | *Id.*, at 2. Regarding request number 2, Defendant alleges that the forensic report is incomplete and that
7 | the picture of him holding a gun as referenced by the AUSA is not present. *Id.*, at 3. Defendant further
8 | submits for the first time that LVMPD has thwarted his efforts to conduct his own forensic examination
9 | of the phone. *Id.*, at 5. Defendant moves to preclude all evidence that contradicts the United States'
10 | representation regarding request numbers 3, 5 and 8. *Id.*, at 5, 6, 7. Regarding request numbers 4, 7, 9,
11 | 10 and 11, Defendant states that it relates to the collective knowledge doctrine. *Id.*, at 5, 6-8. Regarding
12 | request number 6, Defendant submits, again for the first time, that the information is necessary to
13 | challenge the search warrant under *Franks*. He also argues that the information relates to the collective
14 | knowledge doctrine. *Id.*, at 6. Additionally, Defendant requests the phone number and carrier for the cell
15 | phone Officer Segura used on October 6, 2014, as well as all documentation in the possession of LVMPD
16 | demonstrating that the phone has been destroyed, disconnected or assigned to another officer. *Id.*, at 7.

17 | **II.     ANALYSIS**

18 | As a general rule, a criminal defendant has no constitutional right to discovery. *Weatherford v.*
19 | *Bursey*, 429 U.S. 545, 559 (1977). However, certain discrete areas of discovery do exist. Rule 16, the
20 | Jencks Act, and the rules of law articulated by the Supreme Court in *Brady v. Maryland,* 373 U.S. 83
21 | (1963); *Giglio v. United States*, 405 U.S. 150 (1972); and their progeny govern discovery in criminal
22 | proceedings.

23 | **A.     Required Disclosures Pursuant to *Brady/Giglio***

24 | In *Brady* and subsequent cases, the Supreme Court imposed an obligation on the government to
25 | learn of and disclose exculpatory or impeachment evidence favorable to the defendant within the
26 | prosecution's possession. It held that where the government suppresses favorable evidence, it violates
27 | the defendant's right to due process if the evidence is material to guilt or punishment, and the good faith
28 | or bad faith of the government is irrelevant. *Kyles v. Whitley*, 514 U.S. 419, 432-34 (1995) (citing *Brady*,

1   373 U.S. at 87). Thus, the government has a constitutional duty to disclose exculpatory material pursuant

2   to *Brady*, and no court order is required. *Id*.

3         Evidence is material under *Brady* if there is a reasonable probability that, if the government had

4   disclosed the evidence to the defendant, the result of the proceeding would have been different. *See United*

5   *States v. Bagley,* 473 U.S. 667, 681 (1985); *see also United States v. Acosta*, 357 F.Supp.2d 1228, 1243

6   (D. Nev. 2005) (materiality standard governs pretrial requests for *Brady* disclosure). Although *Brady*

7   should be interpreted broadly to encourage prosecutors to carry out their duty, it does not require the

8   government to disclose every scrap of evidence that could conceivably benefit a defendant. *See, e.g.,*

9   *Moore v. Illinois*, 408 U.S. 786, 795 (1972) ("We know of no constitutional requirement that the

10  prosecution make a complete and detailed accounting to the defense of all police investigatory work").

11  A defendant's allegation that the requested information might be material does not entitle him or her to

12  an unlimited or unsupervised search of the government's files. *See Pennsylvania v. Ritchie,* 480 U.S. 39,

13  59 (1987). The government alone determines which information must be disclosed pursuant to *Brady*, and

14  the prosecutor's decision is final. *Id*. As a result, the Supreme Court has cautioned the government not

15  to "tack[] too close to the wind." *Kyles*, 514 U.S. at 439. The government has the responsibility to make

16  judgment calls about what qualifies as "favorable evidence" subject to disclosure under *Brady* and its

17  progeny, and whether certain evidence is "favorable" depends on the context of the existing or potential

18  evidentiary record. *Id*. The prosecutor is a representative of the government whose interest in a criminal

19  prosecution is "not that it shall win a case, but that justice shall be done.'" *Id*. (*quoting Berger v. United*

20  *States*, 295 U.S. 78 (1935)). Therefore, "the prudent prosecutor will resolve doubtful questions in favor

21  of disclosure." *Id.* (citing *United States v. Agurs*, 427 U.S. 97, 108 (1976)).

22        Impeachment evidence is exculpatory evidence within the meaning of *Brady. See Giglio,* 405 U.S.

23  at 154; *see also Bagley,* 473 U.S. at 676. *Brady/Giglio* information includes information bearing on the

24  credibility of a significant witness in the case. *United States v. Blanco*, 392 F.3d 382, 387 (9th Cir. 2004)

25  (internal citations omitted). Impeachment evidence is favorable *Brady/Giglio* material "if the reliability

26  of the witness may be determinative of the defendant's guilt or innocence." *United States v. Bracy*, 67

27  F.3d 1421, 1428 (9th Cir. 1995) (citing *Giglio*, 405 U.S. at 154).

28  . . . .

7

1    In the instant case, the United States has made a determination that no favorable material exists

2  that has not been disclosed.  *See* Docket No. 81, at 6-7.  Additionally, Defendant does not raise a

3  *Brady/Giglio* issue in his motion.  *See* Docket No. 80.  The Court will therefore analyze the discovery

4  issues pursuant to Rule 16.

5    **B.    Federal Rule of Criminal Procedure 16**

6    Rule 16 governs criminal discovery and has been significantly expanded since it was adopted, now

7  imposing reciprocal obligations on the government and criminal defendants.  *See United States v. Fort,*

8  478 F.3d 1099, 1102 (9th Cir. 2007).  Rule 16(a) sets forth the government's disclosure obligations.  *See*

9  *generally* Rule 16.  Among them, the government must produce:

10    Documents and Objects.  Upon a defendant's request, the government must
       permit the defendant to inspect and to copy or photograph books, papers,
11     documents, data, photographs, tangible objects, buildings or places, or
       copies or portions of any of these items, if the item is within the
12     government's possession, custody, or control and:

13        (i)    the item is material to preparing the defense;

14        (ii)   the government intends to use the item in its case-in-chief at
                 trial; or

15
16        (iii)  the item was obtained from or belongs to the defendant.

17  Rule 16(a)(1)(E).

18    The Ninth Circuit has clearly held that, in seeking discovery under Rule 16(a)(1)(E)(i) on the

19  ground that the information sought is material to preparing the defense, a defendant must make a threshold

20  showing of materiality.  *United States v. Santiago,* 46 F.3d 885, 894 (9th Cir. 1995).  To satisfy this

21  burden, a defendant must present facts tending to show that the government is in possession of information

22  helpful to the defense.  *Id.*; *see also United States v. Little,* 753 F.2d 1420, 1445 (9th Cir. 1984) (to obtain

23  discovery under Rule 16, a defendant must make a *prima facie* showing of materiality).  "Neither a general

24  description of the information sought nor conclusory allegations of materiality suffice" to show materiality.

25  *Santiago,* 46 F.3d at 894 (citing *United States v. Mandel*, 914 F.2d 1215, 1219 (9th Cir. 1990)).  *See also*

26  *United States v. Liquid Sugars, Inc.,* 158 F.R.D. 466, 471 (E.D. Cal. 1994) ("Ninth Circuit has tasked the

27  defendant with more than generally asking for 'helpful evidence' or 'relevant evidence,' or some other

28  such broadly phrased request").  Evidence is material if it will "play an important role in uncovering

8

1    admissible evidence, aiding in witness preparation, corroborating testimony, or assisting impeachment or
2    rebuttal." *Id*.  "On the other hand, requests which are designed to generally cast for impeachment material
3    ... are not material.  Such requests are simply speculative inquiries without basis in fact to believe that the
4    information acquired will be significantly helpful." *United States v. Salyer*, 271 F.R.D. 148, 157 (E.D.Cal.
5    2010) (quoting *Liquid Sugars, Inc*., 158 F.R.D. at 472).  In determining materiality, a court will view the
6    demonstrated or obvious burden of production on the government in light of the demonstrated need for
7    the evidence.  *United States v. Jack*, 257 F.R.D. 221 (E.D.Cal.2009).

8        In *Santiago*, the defendant was accused of murdering a fellow prisoner, and he asked to review the
9    prison files of any inmate the government intended to call at all trial.  According to the defendant, because
10   the government intended to introduce evidence of the defendant's gang activities at trial, the prison files
11   were impeachment evidence, as the information would show the government's witnesses were rival gang
12   members.  The Ninth Circuit found that "[t]hese assertions, although not implausible, do not satisfy the
13   requirement of specific facts, beyond allegations, relating to materiality." *Santiago,* 46 F.3d at 894.  The
14   Court observed that the defendant failed to cite any fact, such as his own statement or a statement from
15   one of the witnesses, that might link a witness to a rival gang.  *Id.* at 895.  Because the defendant made
16   only conclusory allegations not grounded in fact, the court found he had not established the information
17   sought was material.  *Id*; *accord Salyer*, 271 F.R.D. at 158 ("In other words, simply having an educated
18   guess about documents' helpfulness was insufficient").

19       In *Salyer*, the Court found that, "for the most part," Salyer's discovery requests show that "he
20   simply desires to look through a potentially massive amount of documents in different categories on the
21   chance that something good might turn up for him in that production." *Id*.  The Court referred to one of
22   Salyer's discovery requests: "All reports or documents detailing any contacts between any other
23   government informant or agent and the government," and held that "[t]o permit this catchall request to
24   meet materiality standards would be the equivalent of mandating open file discovery..." *Id*.

25       Here, Defendant's discovery requests are phrased similarly to the ones the Court rejected in *Salyer*.
26   The Court addresses each in turn.  In discovery request 1, Defendant requests "All emails, texts, letters,
27   reports, inventory documents, and other written documents concerning the search warrant of [Defendant's]
28   phone between LVMPD personnel and between LVMPD personnel and the [Secret Service]." Docket No.

80, at 8.  Defendant then appears to state that he wants documents demonstrating the chain of custody for the cell phone when it was transferred between LVMPD and the Secret Service.  *Id*.  The search warrant at issue is one that was  completed after Defendant's arrest, and the United States submits that Defendant is not charged at this time with any crime originating out of the search of his phone, and that no evidence from that search will be offered by the United States to establish that the recovery of the firearm from Defendant's person was constitutional.  Docket No. 81, at 2.  More significantly, Defendant makes no attempt to demonstrate that the request meets "the requirement of specific facts, beyond allegations, relating to materiality." *Santiago*, 46 F.3d at 894.  Therefore, Defendant's first discovery request is denied.

Defendant's second discovery request, for his "complete phone records - phone, email and text - for the phone the [Secret Service] searched," Docket No. 80, at 9, also relates to the search warrant that is not at issue in the instant case.  Defendant again fails to even attempt to demonstrate materiality.  *Id*.  Additionally, the United States submits that it provided the disc containing the entire forensic examination to Defendant and has nothing further in its possession.  Docket No. 81, at 3.  The Court therefore finds, pursuant to Rule 16(a)(1)(E), that any further documents are not within the government's possession, custody or control, and denies request number 2.

Defendant's third discovery request is for "all emails, texts, letters, reports, and other written documents" upon which the Secret Service relied in arriving at its assessment that Defendant is a pimp and carries a weapon.  Docket No. 80, at 9.  The United States' response to this request demonstrates that, pursuant to Rule 16(a)(1)(E), that no documents are within the government's possession, custody or control that respond to this request, and it is therefore denied.

Fourth, Defendant requests "[a]ll emails, texts, letters, reports, and other written documents relied upon by the [Secret Service] and any other agency regarding Fortenberry."  Docket No. 80, at 9.  This request, like many of the requests in *Salyer*, is a catchall request that, if the Court found it met materiality standards, would be tantamount to mandating open file discovery.  This "omnibus request is decidedly improper if materiality standards mean anything." *Salyer*, 271 F.R.C. 148, at 163.  The Court, therefore, denies this request.

Fifth, Defendant requests all LVMPD surveillance videos, logs and pictures and Secret Service video surveillance of him.  Docket No. 80, at 10.  The United States represents that none of this

10

1    information exists.  Docket No. 81, at 4.  Therefore, pursuant to Rule 16(a)(1)(E), the Court denies this
2    request.

3           Sixth, Defendant requests "[a]ll emails, texts, letters, reports, and other written documents from
4    or to LVMPD agencies, other than the Vice Unit, regarding [his] alleged counterfeit activities."  Docket
5    No. 80, at 10.  The United States submits that it has not charged Defendant with any counterfeiting-related
6    crimes, and is also not relying on any counterfeiting activities in the instant case.  Docket No. 81, at 4.
7    Further, Defendant makes no attempt to show materiality for this request, stating only that the Secret
8    Service began investigating him for counterfeiting activities.  Docket No. 80, at 10.  This request is
9    phrased much like the ones the Court denied in *Salyer* and, further, fails to meet "the requirement of
10   specific facts, beyond allegations, relating to materiality."  *Santiago*, 46 F.3d at 894.  As the Court stated
11   in *Salyer*, this "omnibus request is decidedly improper if materiality standards mean anything."  *Salyer*,
12   271 F.R.C. 148, at 163.  The Court, therefore, denies this request.

13          Seventh, Defendant requests all "handwritten notes, emails, text messages, and phone call histories
14   underlying the [Secret Service's] surveillance logs."  Docket No. 80, at 10.  The United States responds
15   that it is not using this surveillance in the instant case.  Docket No. 81, at 4.  Defendant has, again, failed
16   to make the threshold showing of materiality which, as the Court has already stated above, requires a
17   presentation of "facts which would tend to show that the Government is in possession of information
18   helpful to the defense."  *Mandel*, 914 F.2d at 1219.  "Neither a general description of the information
19   sought nor conclusory allegations of materiality suffice."  *Id*.  Therefore, the Court denies this request.

20          Eighth, Defendant requests "[a]ll communications between officers and agents involved in
21   investigating this case during the six hours prior to [his] arrest."  Docket No. 80, at 11.  In the body of the
22   request, Defendant asks for written communications.  *Id*.  Though Defendant again failed to discuss
23   materiality for this request, the Court finds that materiality is evident from the nature of the request.
24   *Salyer*, 271 F.R.D. at 157.  Further, the Court again notes the practice in this District to deem all required
25   discovery requests as having been made and to provide witness statements of any witnesses testifying at
26   the hearing prior to the time prescribed by the Federal Rules.  The United States represents that it has
27   provided Defendant with all text messages between the officers that still exist.  Docket No. 81, at 5.
28   Defendant, in reply, asks the Court to order the United States to provide him the phone number and carrier

11

1    for the cell phone Officer Segura used on October 6, 2014, as well as all documentation in the possession

2    of LVMPD demonstrating that the phone has been destroyed, disconnected or assigned to another officer.

3    Docket No. 84, at 7.  Defendant, however, fails to cite any authority for that request, or to demonstrate

4    materiality.  The Court, therefore, finds that the United States has complied with this request.

5    Ninth, Defendant requests the names of all LVMPD officers who assisted the Secret Service "in

6    any way during the [Secret Service's] surveillance of [him] in Nevada."  Docket No. 80, at 11.  The United

7    States submits that it has already provided the names of the officers who participated in the surveillance

8    on the date of Defendant's arrest.  Docket No. 81, at 5.  Further, the United States submits that this

9    information does not relate to collective knowledge, as it is not relying upon surveillance that did not occur

10   on the date of Defendant's arrest.  *Id*.  Like many of Defendant's request, he fails to give a date range for

11   the instant request.  This request is phrased much like the ones the Court denied in *Salyer* and, further, fails

12   to meet "the requirement of specific facts, beyond allegations, relating to materiality."  *Santiago*, 46 F.3d

13   at 894.  As the Court stated in *Salyer*, this "omnibus request is decidedly improper if materiality standards

14   mean anything."  *Salyer*, 271 F.R.C. 148, at 163.  The Court finds that the United States has complied with

15   this request to the extent it relates to any surveillance conducted on the date of Defendant's arrest in the

16   instant case.  To the extent it relates to any other surveillance, this request lacks materiality.  The Court,

17   therefore, denies this request.

18   Tenth, Defendant requests "[a]ny surveillance of [him] conducted by any agency or department at

19   the request of the [Secret Service] or LVMPD."  Docket No. 80, at 11.  The United States responds that

20   the information requested is not relevant, as it is not relying on any such information, to establish the

21   collective knowledge of the LVMPD officers who arrested Defendant in the instant case.  Docket No. 81,

22   at 5.  Like request nine, Defendant fails to give a date range for the instant request.  Like request nine, this

23   request is phrased much like the ones the Court denied in *Salyer* and, further, fails to meet "the

24   requirement of specific facts, beyond allegations, relating to materiality."  *Santiago*, 46 F.3d at 894.  As

25   the Court stated in *Salyer*, this "omnibus request is decidedly improper if materiality standards mean

26   anything."  *Salyer*, 271 F.R.C. 148, at 163.  The Court, therefore, denies this request.

27   Eleventh, Defendant requests "[a]ll cell cite [sic] simulator ... information used to track [him] and

28   the vehicles he has allegedly driven."  Docket No. 80, at 12.  Again, Defendant fails to limit the request.

Further, the United States has repeatedly represented to the Court that no cell site simulator was used on the day of Defendant's arrest in the instant case, that it did not use cell site simulator information to establish probable cause for Defendant's arrest in the instant case, and that cell site simulator information did not contribute to the collective knowledge of the officers who arrested Defendant in the instant case. Docket No. 81, at 6. *See also* Docket Nos. 47, 49.  This request fails to meet "the requirement of specific facts, beyond allegations, relating to materiality." *Santiago*, 46 F.3d at 894.  The Court, therefore, denies this request.

**III.     CONCLUSION**

Accordingly, for the reasons stated above,

**IT IS ORDERED** that Defendant's second motion to compel discovery, Docket No. 80, is hereby **DENIED**.  Nonetheless, the Court orders that, to the extent they currently exist and have not already been produced, any written statements of any witnesses the United States intends to call on direct examination in the evidentiary hearing on the motion to suppress evidence must be produced to Defendant prior to the resumption of the evidentiary hearing.

**IT IS FURTHER ORDERED** that Defendant's motion to withdraw his motion for production of text messages, Docket No. 74, is hereby **GRANTED**.

**IT IS FURTHER ORDERED** that Defendant's motion for production of text messages, Docket No. 68, is deemed **WITHDRAWN**.

**IT IS FURTHER ORDERED** that the evidentiary hearing on Defendant's motion to suppress evidence, Docket No. 33, shall resume on July 1, 2015, at 10:00 a.m., in Courtroom 3A.

IT IS SO ORDERED.

DATED: June 11, 2015.

_____
NANCY J. KOPPE
United States Magistrate Judge

13