UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff<br><br>v.<br><br>ANTWAN FORTENBERRY,<br><br>    Defendant | 2:14-cr-00387-JAD-NJK<br><br>**Order Adopting Report and Recommendation, Granting in Part Motion to Suppress, and Overruling Objections**<br>**[Docs. 33, 97, 99]** |

Defendant Antwan Fortenberry stands accused of two firearm offenses after he advised law enforcement officers that he had a handgun in his waistband as they began to conduct an investigatory stop of him while he sat in his parked car. Fortenberry challenges his stop as a Fourth Amendment violation and moves to suppress all evidence obtained from him.[1] He also claims he was not *Mirandized*, so his statements also must be suppressed because he never waived his Fifth Amendment rights.[2]

After a two-day evidentiary hearing,[3] Magistrate Judge Nancy Koppe found that the law enforcement officers were credible witnesses, that they had reasonable suspicion for the investigatory stop under the collective-knowledge doctrine, and that Fortenberry was not under arrest when he admitted he had the gun in his waistband.[4] She recommends I deny the motion to suppress the evidence obtained from the stop, along with Fortenberry's statements that he had a gun in his waistband and wanted his girlfriend to pick up his car so it wouldn't get towed. But she further recommends that I grant the motion to exclude Fortenberry's other post-arrest statements because the

---

[1] Doc. 33.

[2] Doc. 33 at 8.

[3] Docs 75, 98 (transcripts); 66, 94 (minutes).

[4] Doc. 97 at 10–13.

government failed to show that Fortenberry waived his *Miranda* rights.[5]

Fortenberry objects.[6] He argues that Sergeant Hibbits and arresting officer Bunn were not credible witnesses so the magistrate judge should not have found their testimony reliable. He maintains that he was not merely stopped—he was arrested—and all evidence must be suppressed because the officers lacked probable cause for that arrest. At a minimum, Fortenberry argues, the gun and his statement that he had a gun in his waistband must be suppressed because the statement was in response to a custodial interrogation performed without a *Miranda* waiver. Finally, he argues, even if the police merely stopped him, they lacked reasonable suspicion to even do that.

The government responds[7] that the inconsistencies in the law-enforcement officers' testimony that Fortenberry claims render them incredible are not material to the magistrate judge's findings and conclusions. It further argues that those findings and conclusions are supported by the evidence and the collective-knowledge doctrine. Fortenberry was merely stopped, and law enforcement had reasonable suspicion of his involvement in criminal activity to conduct that stop. Once he alerted officers to the concealed, obliterated-serial-number gun in his waistband, they had probable cause to arrest this ex-felon, too.

**Discussion**

The Federal Magistrates Act[8] "permits a district court to refer to a magistrate a motion to suppress evidence and authorizes the district court to determine and decide [the] motion based on the record developed before a magistrate, including the magistrate's proposed findings of fact and recommendations."[9] When a party files specific objections to a magistrate judge's findings and recommendations, the district court must conduct a de novo review of the portions of the report to

---

[5] Doc. 97.

[6] Doc. 99.

[7] Doc. 101. No reply was filed.

[8] 28 U.S.C. § 636(b)(1)(B).

[9] *United States v. Raddatz*, 447 U.S. 667, 669 (1980).

which objections are made.[10] Although the district judge can make its de novo determination without a new hearing, a hearing is required before the district court can reject the magistrate judge's factual findings.[11]

I have considered the original briefing, the report and recommendation, Fortenberry's objections, and the government's response.[12] I have read the minutes from[13]—and pored over the transcripts of—Magistrate Judge Koppe's evidentiary hearing.[14] In addition, because Fortenberry challenges Judge Koppe's credibility determinations, I listened carefully to the portions of the audio recording of that hearing that contain the contested testimony identified in Fortenberry's objections. I have also examined the exhibits admitted into evidence at the hearing and reviewed the authority the magistrate judge cited in her report and recommendation. Having conducted a de novo review of the report and recommendation, I adopt Magistrate Judge Koppe's findings and conclusions and agree with her recommendations.

### A. Credibility

Fortenberry's argument that the magistrate judge erred in crediting the law-enforcement officers' testimony is not supported by the record. The disparities between the testimony of Sergeant Hibbitts, who directed Patrol Officer Bunn to conduct the investigatory stop and arrest of Fortenberry, and that of Bunn himself are immaterial to the magistrate judge's factual findings. Although Bunn's recall of the events of the arrest was far from perfect, patrol officers' memories are

---

[10] 28 U.S.C. § 636(b)(1)(C); LR IB 3-2(b).

[11] *Raddatz*, 447 U.S. at 674; *United States v. Ridgway*, 300 F.3d 1153 (9th Cir. 2002); *United States v. Thoms*, 684 F.3d 893, 903 (9th Cir. 2012) ("a district court abuses its discretion when it reverses a magistrate judge's credibility determinations, made after receiving live testimony and favorable to the government, without viewing key demeanor evidence" unless "the district judge finds that the magistrate judge's credibility determinations had no legally sufficient evidentiary basis so that, were they jury determinations, judgment as a matter of law would issue for the defendant.").

[12] Docs. 33, 37, 97, 99, 101.

[13] Docs. 66, 94.

[14] Docs. 75, 98.

not infallible. Nor are they expected to be—particularly nine months after a relatively unremarkable arrest. After my careful review of the transcripts and audio recording, I conclude that Bunn's lack of recall was no so poor—nor was it so inconsistent with directing Sergeant Hibbitts's testimony—that it should be wholly discarded. The magistrate judge's recommendation to deny the motion to suppress the gun, Fortenberry's announcement that he had the gun in his waistband, and his request that his girlfriend be permitted to pick up his car so it would not get towed, but to grant the motion to suppress his other statements strikes precisely the right balance: Bunn's testimony about the important events and details of the investigatory stop was trustworthy with one glaring exception: he could not reliably establish that Fortenberry waived his *Miranda* rights. No new evidentiary hearing is necessary.

**B.      Investigatory stop, not arrest**

I also agree with Magistrate Judge Koppe's determination that Bunn conducted a permissible investigatory stop of Fortenberry. Fortenberry claims that he was arrested, not merely stopped, because a reasonable person in his position would not have believed he was free to leave. He contends that his restriction of freedom rose to arrest proportions because his car was boxed in, two uniformed officers surrounded it, and "Bunn barraged" him by asking if he had drugs, weapons or knives. The record simply does not support Fortenberry's characterization that "Bunn barraged" him; he asked a single, officer-safety-related question. And Fortenberry's remaining arguments are inconsistent with Ninth Circuit investigatory-stop jurisprudence.

"A valid stop does not become an arrest merely because law enforcement agents momentarily restrict a person's freedom of movement."[15] This is true even when the restriction is created by boxing in the person's car,[16] by officers approaching the car, or when officers ask questions designed to protect their own safety. Contrary to Fortenberry's objection, the magistrate judge properly relied

---

[15] *United States v. Greene*, 783 F.2d 1364, 1367 (9th Cir. 1986).

[16] *United States v. Summers,* 268 F.3d 683, 686 (9th Cir. 2001) (holding that no investigatory stop occurred when police partially blocked the suspect's car and asked several times for identification because suspect could still have left on foot).

on the Ninth Circuit panel's opinion in *United States v. Patterson*.[17]  The facts of *Patterson* are materially similar.  While defendant Oglesby sat in the driver's seat with the motor running, "two agents converged on the car" and blocked it in with their own.[18]  "As he emerged, Oglesby spontaneously told the agents that there was a gun under the front seat."[19]  He moved to suppress the evidence taken from him, claiming the agents lacked probable cause or reasonable suspicion.[20]  The government conceded the agents lacked probable cause but argued they had "founded suspicion" for an investigatory stop that "ripened into probable cause for an arrest when the gun was discovered."[21]

Oglesby argued that the restriction on his liberty turned the stop into an arrest that required probable cause, but the Ninth Circuit disagreed.  It found that blocking Oglesby's car and ordering him from the car were just "reasonable precautions" during the lawful *Terry* stop:

> we have no difficulty characterizing the agents' initial encounter with Oglesby.  Had he attempted to drive away after they approached him, they could have pursued him.  The Constitution does not require them to have given him a head start.  He was in the driver's seat with the motor running.  Blocking the car was a reasonable precaution to ensure that the inquiry would not be terminated prematurely. . . . Although an innocent person in Oglesby's position might reasonably have believed he was not free to go, the force used was not excessive and the innocent person could not reasonably have assumed he was being taken into custody indefinitely.  The stop was not an arrest.[22]

That the suspected offense in *Patterson* was felony narcotics trafficking, not misdemeanor aiding and abetting prostitution, does not render it inapposite.  The test for whether an arrest has occurred is a totality-of-the-circumstances one and it does not change merely based on the

---

[17] *United States v. Patterson*, 648 F.2d 625 (9th Cir. 1981).

[18] *Patterson*, 648 F.2d at 628.

[19] *Id*.

[20] *Id*.

[21] *Id*. at 631.

[22] *Id*. at 633–34 (internal citations omitted).

characterization of the suspected offense.[23]  Nor is *Patterson* distinguishable because Oglesby revealed his gun without prompting, while Fortenberry declared he had a gun in his waistband after being asked if he was armed.[24]  "Police are entitled to take steps to assure that the person stopped is not armed."  That includes asking questions "necessary to secure their own safety or the safety of the public."[25]

The testimony at the evidentiary hearing demonstrated that this investigatory stop of Fortenberry as he sat in the driver's seat of his parked car was brief, officers did not have guns drawn,[26] and Fortenberry announced he had a gun concealed in his waistband after a single question by the approaching officers.[27]  This stop was proportional to the occasion and brief in duration; it was a valid *Terry* stop, not an arrest, and not custodial.  At the earliest,[28] the encounter ripened into an arrest with probable cause—just like in *Patterson*— when Fortenberry announced that he had a

---

[23] *Id*. at 632.

[24] Doc. 98 at 153.

[25] *New York v. Quarles*, 467 U.S. 649, 659 (1984); *United States v. Basher*, 629 F.3d 1161, 1167 (9th Cir. 2011) (relying on *Quarles*'s public-safety exception to question about the location of a gun); *United States v. Willis*, 431 F.3d 709, 712, 717 (9th Cir. 2005) (holding that suppression was not required when officer during stop asked, "Do you have anything on you I should know about?" and the defendant ultimately responded, "a gun.").  And because "[a]n officer's subjective motivation is not relevant in analyzing whether questioning falls within the public safety exception," *Basher*, 629 F.3d at 1167, it makes no difference that Bunn testified that he asked Fortenberry whether he had guns or weapons for safety reasons *and* "as a distract tactic."  Doc. 98 at 154:6.

[26] Doc. 98 at 155–56.

[27] Doc. 98 at 153, 156.

[28] The stop likely did not even ripen into an arrest when Fortenberry announced he had a concealed weapon and Bunn handcuffed him to retrieve it.  As the Tenth Circuit explained in *United States v. Pontoo*, 666 F.3d 20, 30–31 (10th Cir. 2011), "the limits of a *Terry* stop are not automatically transcended by an officer's use of other prophylactic measures.  When officer safety is a legitimate concern," as it clearly was once Fortenberry announced he had a concealed firearm, "a *Terry* stop appropriately may involve the application of handcuffs . . . ."  *See also United States v. Mattarolo*, 209 F.3d 1153, 1158 (9th Cir. 2000) (quoting *Terry v. Ohio*, 392 U.S. 1, 24 (1968) ("*Terry* allows for a limited search of a suspect's person in order for the officer "to determine whether the person is in fact carrying a weapon.").

concealed firearm.[29] The magistrate judge properly concluded that the evidence obtained from Fortenberry's stop and arrest should not be suppressed.[30]

### C.   *Reasonable suspicion for the stop*

Fortenberry also has not demonstrated that the magistrate judge erred by applying the collective-knowledge doctrine to conclude that the arresting officers had reasonable suspicion to conduct the investigatory stop. He argues that the reasonable-suspicion finding ignores many uncontested facts including: "[t]he Secret Service had no more than a hunch that Mr. Fortenberry 'had a propensity for pimping," information they shared with Hibbitts; they never confirmed those suspicions by interacting with Fortenberry or the women alleged to be in his employ; Ms. Villasana did not solicit prostitution until after she was dropped off at the Paris Hotel, so no crime was occurring at the time of the drop off; nobody identified Fortenberry as Ms. Villasana's drop-off driver; and although law enforcement followed the grey Infiniti SUV to the Gold Key Shops after it dropped off Ms. Villasana, there was a break in the surveillance.[31] But these facts do not undermine the magistrate judge's reasonable-suspicion determination because Sergeant Hibbetts still had "a particularized and objective basis for suspecting" Fortenberry "of criminal activity" based on "the totality of the circumstances—the whole picture" without these facts.[32]

As Sergeant Hibbetts summarized at the hearing, there were numerous articulable facts to give rise to a reasonable basis to suspect Fortenberry of aiding and abetting prostitution. Ms. Villasana was arrested for prostitution shortly after being dropped off at the Paris Hotel by a vehicle

---

[29] *See also United States v. Greene*, 783 F.2d 1364, 1368 (9th Cir. 1986) (quoting *United States v. Medina-Gasca*, 739 F.2d 1451, 1453 (9th Cir. 1984), which holds, "founded suspicion to stop for investigatory detention may ripen into probable cause to arrest through the occurrence of facts or incidents after the stop").

[30] Doc. 97 at 13.

[31] Doc. 99 at 23.

[32] *Navarette v. California*, 134 S. Ct. 1683, 1687 (2014) (quoting *United States v. Cortez*, 449 U.S. 411, 417–18 (1981)); *see also United States v. Palos-Marquez*, 591 F.3d 1272, 1274–75 (9th Cir. 2010) (quoting *United States v. Berber–Tinoco*, 510 F.3d 1083, 1087 (9th Cir. 2007)).

of the same make, model, and color as Mr. Fortenberry's.[33] That vehicle was tailed from the Paris to the Gold Key Shops where Mr. Fortenberry was later found parked in a vehicle that matched the make, model, and color of the one that left the Paris Hotel.[34] Hibbitts further testified that law enforcement had found information to corroborate that Villasana and Benjamin were prostitutes in Fortenberry's employ, as Secret Service had indicated. Both women had been arrested for prostitution in the months before Fortenberry's October 6, 2015, arrest in this case;[35] the same make, model, and color vehicle that dropped Villasana off at the Paris that day was seen dropping Benjamin off at the MGM before she was arrested there;[36] and Secret Service provided Hibbitts with photographs of Fortenberry and the car.[37]

Additionally, Sergeant Hibbetts testified that Fortenberry's presence in the proximity of the Paris Hotel while Ms. Villasana was soliciting prostitution there contributed to his belief that Fortenberry was involved in the criminal activity because, in his experience, "it is common for a pimp or someone providing transportation to a prostitute to drive a short distance or to go a short distance and then wait for the prostitute to finish [her] business and then return to pick [her] up . . . ."[38] "An officer is entitled to rely on his training and experience in drawing inferences from the facts he observes,"[39] and reasonable suspicion "is not a matter of hard certainties, but of probabilities."[40] These facts and observations gave the investigators on this case the particularized and objective basis they needed to suspect that Fortenberry was aiding and abetting prostitution.

---

[33] Doc. 98 at 114–115, 126, 129–31, 138.

[34] Doc. 98 at 114–115, 126, 129–31, 138.

[35] Doc. 98 at 54–55.

[36] Doc. 98 at 55–57.

[37] Doc. 98 at 52, 57–58.

[38] Doc. 98 at 116.

[39] *United States v. Mariscal*, 285 F.3d 1127, 1130 (9th Cir. 2002).

[40] *Mattarolo*, 209 F.3d at 1157.

Based on these reasons and because I am adopting Magistrate Judge Koppe's findings, conclusions, and recommendations in their entirety, Fortenberry's objections are all overruled.

**Conclusion**

IT IS THEREFORE ORDERED that Magistrate Judge Koppe's Report and Recommendation **[Doc. 97] is ADOPTED** in its entirety and defendant's objections **[Doc. 99] are OVERRULED**;

IT IS FURTHER ORDERED that defendant's Motion to Suppress Evidence Seized in Violation of the Fourth and Fifth Amendments is **[Doc. 33] GRANTED in part and DENIED in part:**

- Defendant's request to suppress his stop and arrest and all evidence obtained as a result, including the firearm, is DENIED;
- Defendant's request to suppress his pre-arrest statement that he had a gun in his waistband is DENIED;
- Defendant's request to suppress his post-arrest statement that he wanted his girlfriend Villasana to pick up his vehicle is DENIED; but
- Defendant's request to suppress his post-arrest statement that he did not want to talk to police, he knew nothing about the gun, and he did not drop Villasana off at the Paris Hotel is GRANTED.

Dated this 19th day of August, 2015

_____
Jennifer Dorsey
United States District Judge